May it please the court. Good morning, Your Honor. My name is Richard Timor. I represent the defendant's appellant. And with the court's permission, I would like to reserve two minutes of my argument, of my time, for a rebuttal. You certainly may, but watch the clock as it counts down. I will watch the clock, Your Honor. Thank you. Your Honors, Ms. Botelho, in this case, was constitutionally entitled to effective assistance of counsel, and she didn't get it. She was facing a mandatory minimum 20-year sentence. And she was told by her attorney that in order to get below that, all she needed to do was debrief with the government. That is, come in, talk to the government, and tell them what she did in this particular case. Mr. Timor, what do we do with the fact that we have two separate district court judges, after hearing evidence, including testimony from your client, conclude that she was not credible? And that, therefore, the factual predicate for her ineffective assistance of counsel argument depends on that credibility determination. And if it was decided adversely to her, then how can she possibly prevail on this appeal? Your Honor, I disagree that the prejudice finding in this case depends on the credibility of my particular client. The record in this particular case has sufficient facts in it where this reviewing court can look at those facts and say to itself, there are facts that do not rely on Ms. Botelho's credibility that show that there was a reasonable probability that but for the faulty information that she got, that she would have not pled guilty. But we've got a factual finding from Chief Judge Malway that she would not have changed her plea had she been given any different advice. And that also undercuts your response to my question, does it not? That is a factual finding as to her credibility. No. It's a finding of fact that no matter what she would have been told, she would not have changed her mind because of the fact that she knew at all times that if she ran the gauntlet and went to trial, she was looking at the mandatory minimum or perhaps more. That's a finding of fact, counsel. It's a mixed finding of fact and law. No. You're separating the legal question of prejudice, which follows from the factual finding. But in order to conclude that the district court committed legal error in ruling on the prejudice issue, we would have to find that the underlying factual finding is clear error. Isn't that the analysis? No, Your Honor. I disagree with that analysis. Where have I gone wrong? Well, you review the factual findings of the court. That is, credibility issues, what was said, what was not said for clear error. And are you challenging those factual findings as clearly erroneous? No, I'm not. Okay. I am not challenging those factual findings as clearly erroneous. However, I am saying that the record still has facts to indicate, without any credibility finding with respect to my client in terms of what she would have done, that indicate that but for the faulty information that she got, she would not have pled guilty. Let me, if I can, I'll. If I could just follow up on Judge Tallman's question. Setting aside for a moment the point that your client lied under oath, at least as determined by the district court, you bear the burden of proof under Strickland, do you not, on both prongs? Yes. Okay. And in this case, not only did your client lie under oath according to the district court, but there was very strong evidence against her, and she benefited from the guilty plea, as Judge Tallman suggested. Wherein do you carry the burden? And let's start with the prejudice problem. In what way do you carry that burden? In other words, what evidence have you put forward to refute the points that Judge Tallman and I have been discussing with you? Well, Your Honor, it's important to note that the standard for prejudice in this particular case is that it's just a reasonable probability. It doesn't have to be absolute. It doesn't have to be even close. It's just a reasonable probability. That is, facts in the record indicate. And that's your burden, right? That's correct. And wherein have you established that there is a reasonable probability that your client would have not pled guilty except for the alleged erroneous advice? I don't see it. Where is it in the record? Well, if you look in the record at page 87, her counsel's declaration, that is her counsel who gave her this information, specifically says that a sentencing reduction was a motivating factor for her to plead guilty. What's wrong with that? That's done all the time, isn't it? Absolutely. But that indicates, you asked me whether or not there's something in the record that indicates that but for that information. Okay, but I think perhaps we're getting mixed up with your citation to Roe v. Flores or Ortega where I think you've mixed up who has the burden of proof here. Between Judge Tall and myself, we've mentioned three different bases that have been alleged and shown in the record here as more than adequate reasons why your client did plead guilty. I've asked you wherein on the record your client has proven that notwithstanding these things, that there was a reasonable basis that she would not have pled guilty. I don't see it in the record. I'm asking you to point to me in the record exactly what you're using to refute these three prongs that I've referred to. Well, Your Honor, you have to look at the possible choices that Ms. Botello had in deciding whether to plead guilty. And she had at least two without the information that her attorney gave to her. That is, one, go to trial and get the same. Go to trial. If she loses, she will get the same 20-year mandatory minimum sentence. Or that possibility that she didn't know what she was going to get, right? Absolutely not. But the other possibility if she went to trial is that she would have gotten acquitted. Or a longer sentence. Convicted and then get a longer, up to 30 years. Well, up to 30 years, the statutory maximum. However, the sentencing guideline range, even after a jury trial, would not have even reached the mandatory minimum. That is the 240 months that she ultimately got. So, in other words, Your Honor, it's she didn't get anything from this plea. That's the point. I guess that's the point. Sure she did. She eliminated the possibility that she might get 10 years more than what she got if she rolled the dice and the jury disbelieved her. That's what she got from the certainty of the plea. And as I recall, didn't the government also agree to dismiss another charge against her? That's true, Your Honor, but I don't think that. So there was quid pro quo for the deal. Well, if you're looking at the statutory maximums, yes, but the sentencing guidelines never even reached that level. She's still going to do the mandatory minimum. And since the guidelines are advisory of the sentencing court after listening to the evidence against her at trial, could well have decided to vary upward and give her more than the mandatory minimum. That's always a possibility, Your Honor, but there was nothing egregious about this particular case. It was a dope case. But we're talking about what she got in return for the deal, and that was a risk that she faced if she did not plead guilty, is it not? It is a risk that every defendant faces when they don't get sentenced to the statutory maximum. There's a real problem here that the only effective remedy for her was to cooperate and provide substantial assistance to the government, and she didn't want to do that because there were people she didn't want to testify against. That's true. That is absolutely true, but her attorney said you did not have to do that. All you had to do was debrief, and you could get below the 20-year mandatory minimum. That's the problem. But she didn't want to debrief. I mean, that's a finding of fact by both district judges, isn't it? She did want to debrief, Your Honor. It's fairly clear from the record. Her own attorney in her testimony in her motion to withdraw specifically says, and this is an excerpt of Record 98-99, this is her attorney speaking. She says she, talking about her client, did not want to so-called cooperate, but she was willing to debrief. Well, counsel, you and I both know what cooperation means in order to get a 5K1.1 departure below a mandatory minimum. It means you've got to satisfy the government that you've told them everything that you know and that you have agreed to do what the government wants you to do, which usually includes testifying as a government witness against the people you've fingered. She didn't want to do that. She didn't want to do that. Her attorney knew she didn't want to do that, and her attorney still told her you could get below the mandatory minimum. But that's the choice she made. And we've got the adverse credibility finding and the finding of fact that she ran the risk, knowing full well that if she didn't cooperate, she was looking at longer time. Well, and I guess that's ultimately the issue, is whether or not she knew that that was, in fact, the case. But she has the burden, ultimately, under Strickland. We haven't even talked about the other prong, whether there really was sufficient performance. But just on the prejudice prong alone for now, I don't see where, in light of all that we've discussed here, where she meets her burden to show that she has overcome the presumption here in Strickland. I understand the Court's point, Your Honor. I think that in my brief, I've detailed, especially in my reply brief, I've detailed the points that. That's your best shot, right? Thank you. Thank you, Counsel. Your time has expired, Counsel. Thank you very much. We'll hear from the government. Thank you. Thank you, Your Honors. Good morning. May it please the Court. Beverly Lee Samashima, Assistant U.S. Attorney on behalf of the United States. As the Court has noted, we have a very complete record below. We have the testimony of the defendant in both the motion to withdraw a guilty plea as well as the 2255. And we have contradictions on material points in each of those hearings. But what we don't have is any dispute with the fact that Botella was scared of going to trial. We have her testimony in both the motion to withdraw a guilty plea and the 2255, that she and her attorney discussed the possibility of either pleading guilty or going to trial. And she always said, I'm scared. It's two testifying against me, and I'm scared. And the bottom line is, when you look at the entire record. Two witnesses testifying against her plus the fact that she's a prior convicted felon. Exactly. If she took the stand, she'd be impeached. There was a tape recording of her talking to the Airborne Express employee. She knew full well that she was not going to get an acquittal. And so there's no dispute that she felt that she was going to get convicted. And so when Judge Mulway made that finding of fact, which was accurate, that she did not want to go to trial, that she knew she wasn't going to get a better result, that basically takes care of the second prong of Strickland, and defendant cannot meet her burden under that test. Now, she claims that we don't, that just looking at Terada's declaration would mean that she could somehow meet her burden, but that's not true. Terada disputes almost each and every assertion that Botella makes with respect to an ineffective assistance claim. But we don't, as the Court has recognized, you don't need to go there because she can't meet her burden. The defense lawyer testified before Judge Seabright, but not, but supplied a declaration before Judge Mulway. That's correct, Your Honor. But what happened on the 2255 hearing was that the defense attorney did ask Botella about the assertions in that second declaration. So in essence, those assertions were tested, and Ms. Terada was outside the courtroom ready to testify when Judge Mulway felt that we don't even need to get to that point. I've heard enough, basically. Yes, yes. She allowed further briefing because counsel argued that there was some other presumably prejudicial test, but nothing was submitted. There is no case law. Strickland remains the governing standard, and we submit that the record's pretty clear and that the defense can't meet its burden. The defense counsel at paragraph 16, and this is the declaration before Judge Mulway, indicated declarant and defendant discussed and defendant agreed that it was in the defendant's best interest to plead guilty and cooperate because that was the only possible way she could get a reduced sentence. Does that kind of encapsulate it from the government's perspective? Yes, absolutely, Your Honor. I think, again, there's no dispute that she didn't think she could win. I mean, every single time she addressed that point, she says, I'm scared. It's two against one. And counsel was very smart to say, look, you got to cooperate. That's the only way. And if you debrief, that's always a starting point of cooperation. We're not talking about safety valve here. She did not qualify for safety valve, so it wasn't as if she had to be complete and truthful about the entire offense. If she wanted to carve out the source, possibly defense counsel could still make the argument that she's provided enough information to warrant a 5K. But as counsel indicated, she started off wanting to debrief, but for some reason, by October, when she changed her plea, she did a total about-face and decided she did not want to cooperate. So there's no dispute in the record about that. And I think there was a change of heart by the defendant after she entered her plea. And counsel did not want to submit her to a debrief when she started making statements that were a little bit inconsistent with what she had told counsel about the offense conduct before. We spoke earlier with opposing counsel about the prejudice prong of Strickland, not so much about the quality of the counsel in the first place. Is it the government's position that neither the first nor the second prong of Strickland is satisfied in this case? Yes, Your Honor. It's our position that the advice that was given and the representation was competent, that it did not fall beneath the standard of objective reasonableness. We think counsel did everything she could in a basically no-win situation for this particular defendant. Anything further, counsel? Nothing further, unless the Court has questions. If not, the case just argued will be submitted for decision, and the Court will hear argument next in Davis v. The County of Maui.
judges: O'scannlain, Tallman, Smith